1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 | ROBERT L. TREADWELL,                    | CASE NO. 10cv2016-WQH (MDD)
12 |                            Plaintiff,   | REPORT AND
   |        vs.                              | RECOMMENDATION RE: CROSS
13 |                                         | MOTIONS FOR SUMMARY
   |                                         | JUDGMENT.
14 | MICHAEL J. ASTRUE, Commissioner of      |
   | Social Security,                        | [Doc. Nos. 12 and 18]
15 |                            Defendant.   |
16

17

18 **I.      Procedural History**

19        On April 4, 2006, Robert L. Treadwell ("Plaintiff") filed an application for Disability

20 Insurance Benefits, alleging the onset of disability on December 31, 2003.  (A.R. at 201-05).

21 Plaintiff's application was denied initially and on reconsideration.  Id.  Plaintiff requested a

22 hearing before an Administrative Law Judge ("ALJ"), which was conducted on November 6,

23 2008, before Judge Eve B. Godfrey.  (A.R. at 43-105).  After the hearing, the ALJ issued an

24 opinion finding that Plaintiff was capable of work and denying Plaintiff benefits.  Plaintiff's

25 appeal was denied, and on September 28, 2010, Plaintiff filed a Complaint with the Court seeking

26 that the ALJ's decision be overturned, or that his case be remanded for further proceedings.  (Doc.

27 No. 1).  On April 1, 2011, Plaintiff filed the instant Motion for Summary Judgment.  (Doc. No.

28 12).  On May 10, 2011, Defendant filed the instant Cross Motion for Summary Judgment.  (Doc.

1   No. 18).

2   **II.**     **Statement of the Facts**

3         Plaintiff alleges the onset of disability on December 31, 2003 stemming from arthritis,

4   spinal stenosis, back pain, gastroesophageal reflux disease (GERD), depression, and post traumatic

5   stress disorder (PTSD). (A.R. at 62-63, 235, 265). Prior to the alleged disability, Plaintiff had

6   acquired a GED, served in the military for four years, graduated from beauty college, and attended

7   a culinary school. (A.R. at 49, 273). Plaintiff has previously worked as an engraver and trophy

8   designer, a property manager, a wiring technician, customer support, an assistant manager for a

9   retail store, a hair product salesman, an electronics store salesman, a mail dispatcher, and in food

10   preparation. (A.R. at 236, 253).

11         At the hearing, the ALJ found that Plaintiff had the following severe impairments:

12   ostearthritis; patella femoral chondromalcia bilateral; depression; and an anxiety disorder with

13   PTSD features. (A.R. at 35-36). In reaching this decision, the ALJ relied on the testimony of Dr.

14   Sidney Bolter, a board-certified psychiatrist and impartial medical expert, and Dr. Peter

15   Schosheim, a board-certified orthopedic surgeon and impartial medical expert. Id.

16         The ALJ determined that Plaintiff had a Residual Functional Capacity ("RFC") to lift

17   and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for two

18   hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb

19   ramps/stairs, balance, stoop, kneel, crouch and crawl, but not climb ladders or ropes. (A.R. at 37).

20   The ALJ also found that Plaintiff had the mental capacity to perform simple, unskilled work not

21   involving more than minimal contact with others. Id.

22   **III.**     **Legal Standard**

23         The supplemental security income program established by Title XVI of the Act provides

24   benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To

25   qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of

26   a "medically determinable physical or mental impairment" that "has lasted or can be expected to

27   last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A). The

28   disabling impairment must be so severe that, considering age, education, and work experience, the

claimant cannot engage is any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382(a)(3)(B).

The Commissioner makes this assessment through a five-step analysis. First, the claimant must currently be not working. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the claimant can do his past work, benefits are denied. 20 C.F.R. § 416.920(e). Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f). The last two steps of the analysis are required by statute. 42 U.S.C. § 1382(a)(3)(B).

In addition, when evaluating the severity of a claimant's alleged mental impairments, the Commissioner uses a "special technique" at each level of the review process. 20 C.F.R. § 416.1520a. In order to be considered disabled under the Act, the claimant must have: (1) a medically determinable mental impairment(s), 20 C.F.R. § 416.1520a(b)(1)[4], and (2) exhibit specified functional limitations as a result of that impairment(s) that prohibit the claimant from engaging in any gainful activity. 20 C.F.R. § 416.1520a(b)(2). If the claimant has a medically determinable mental impairment but does not exhibit the requisite functional limitations, the claimant may nevertheless still be considered disabled if the claimant exhibits clusters of symptoms or a syndrome that indicate the inability to engage in gainful activity. 20 C.F.R. § 404.1520a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A. (impairment(s) must either pose functional limitations or cause symptoms or a syndrome to support a finding of disabled).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42

---

[4]There are nine diagnostic categories that the Act considers to be medically determinable mental impairment(s): Organic mental disorders (12.02); schizophrenic, paranoid, and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). 20 C.F.R.Pt. 404, Subpt. P, App. 1 § 12.00.A.

U.S.C. §§ 1383(c)(3), 405(g).  The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433(9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. Sandqathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576, (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel.  Id. (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983)).

Even if the reviewing courts finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).  Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administrator for further proceedings.  Id.

**IV.     DISCUSSION**

At the core of the dispute is the ALJ's finding that Plaintiff did not suffer PTSD, but only a general anxiety disorder with PTSD features and the resulting RFC finding that Plaintiff was

capable of simple, unskilled work involving minimal contact with others.  In his Motion, Plaintiff contends that his mental function is more severely limited, and that the ALJ's contrary finding was based on four reversible errors in her decision.  First, Plaintiff contends that the ALJ erroneously rejected the opinion of Dr. Jarrin, an internist who has been treating Plaintiff at the VA Medical Center since 2003.  Second, Plaintiff contends that the ALJ erred in rejecting the opinions of Drs. Essex and Torricelli, psychiatrists who also treated Plaintiff at the VA Medical Center.  Third, Plaintiff asserts that the ALJ erred by relying on the opinion of Dr. Bolter, a non-examining physician, rather than examining physicians, to support her finding of Plaintiff's mental limitations.  Finally, Plaintiff asserts that the ALJ lacked the support of substantial evidence when she determined that Plaintiff's claims about disabling symptoms were not credible.  Plaintiff asks the Court to reverse the decision of the ALJ and remand for a determination of benefits, or in the alternative, to remand for a new hearing.

Defendant contends that the ALJ's decision is well-supported and free of reversible error. Defendant asks the Court to uphold the decision of the ALJ, or, if the Court should find legal error, to remand for further proceedings rather than a determination of benefits.

### A.      The ALJ's Rejection of Internist Jarrin's Opinion

In her report, the ALJ rejected the opinions of Dr. Jarrin, stating:

> I give no weight to the conclusory opinions of Dr. Jarrin that the claimant is "unable to work due to his physical and mental illness" dated July 7, 2006 and November 15, 2008 [citing to AR 376, 881-88].  There are absolutely no treatment record[s] in the file from this physician.  By regulation, opinions that the claimant is "disabled" or "unable to work" are not entitled to any special significance, even when offered by a treating source.
> (20 C.F.R. § 404.1527(e)(3) and Social Security Ruling 96-5p).

Plaintiff contends that the ALJ erred by rejecting Dr. Jarrin's opinion that Plaintiff suffered PTSD, a diagnosis shared by Plaintiff's three treating physicians at the VA.  (Doc. No. 12 at 19).  The ALJ instead relied on the opinion of Dr. Bolter to find that Plaintiff had only a "generic anxiety NOS diagnosis" and depression.  (A.R. at 90-91).  Plaintiff contends that the ALJ erred in two ways.  First, the ALJ erred by stating that Dr. Jarrin's finding that Plaintiff is "unable to work" is not entitled to any special significance.  Id. at 21.  Second, the ALJ's finding that there are "absolutely no treatment record[s] in the file" from Dr. Jarrin is clearly erroneous.  (Doc. No. 12 at

20).

Defendant responds that the ALJ's rejection of Dr. Jarrin's opinion as conclusory was not only permissible, but mandatory.  Furthermore, while Defendant acknowledges that there were some treatment notes from Dr. Jarrin in the record, Defendant asserts that the notes in the record were brief and repetitive, such that the ALJ's error in overlooking them was harmless.  (Doc. No. 19 at 17).

First, the ALJ correctly notes that a finding, even by a treating physician, that the plaintiff is "unable to work" is not entitled to any special significance.  20 C.F.R. § 404.1527(e)(3); Social Security Ruling 96-5p.  Those findings are not medical opinions, but administrative findings reserved to the commissioner exclusively.  Id.  Thus, the ALJ did not commit error in rejecting that particular finding.

Second, though the ALJ erred in stating that there were no treatment notes from Dr. Jarrin, the Court finds this to be harmless error.  The Court is mindful of the ALJ's duty to fully and accurately develop the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  Here, the ALJ twice attempted to discern whether the record contained treatment notes from Dr. Jarrin.  At Plaintiff's hearing, the ALJ questioned both Plaintiff's attorney and Dr. Schoscheim regarding Dr. Jarrin's notes.  The ALJ later acknowledged that there was at least one record from Dr. Jarrin from July 2006.  Thus, it appears the ALJ did adequately develop the record, and it would be inappropriate to remand over the ALJ's error in summarizing the record if that error is harmless. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

As an initial matter, it is important to note that the existence of treatment records would not alter the ALJ's decision to reject the Dr. Jarrin's findings that the Plaintiff is "unable to work."  As stated above, the ALJ is required under 20 C.F.R. § 404.1527(e)(3) and Social Security Ruling 96-5p to disregard such opinions, even if they are supported by treatment records.  The extent of Dr. Jarrin's records do, however, bear on the ALJ's decision to reject Dr. Jarrin's opinion in its entirety, as well the ALJ's decision to accept the contrary opinion of Dr. Bolter.  Thus, the Court will examine whether the record contains significant treatment records from Dr. Jarrin.

In his Motion, Plaintiff contends that Dr. Jarrin's opinion is well supported by the record,

and directs the Court to Plaintiff's treatment notes from the VA.  (Doc. No. 12 at 20)( citing A.R. at 330, 340-41, 347, 532, 535-36, 566-67, 629, 635, 756-57, 807, 812, 827-28, 835, 876).  Upon review of these records, however, it appears few of them were actually created by Dr. Jarrin.  For example, Plaintiff cites a September 2005 report by Dr. Essex (A.R. at 347), an examination by Dr. Kim in March 2007 (A.R. at 835), and a mental exam conducted by Dr. Torricelli (A.R. at 876).  Furthermore, of the notes that were created by Dr. Jarrin, few deal with Plaintiff's mental state.  For example, in a note from August 2005, Plaintiff saw Dr. Jarrin after complaining of neck and back pain, and stated during the exam that his mental issues were improving.  (A.R. at 532). These notes indicate that Dr. Jarrin was only minimally involved in treating Plaintiff's mental condition, as Dr. Jarrin himself acknowledges when he states that Plaintiff's mental condition is being treated by the psychiatry department of the VA.  (A.R. at 632).

The ALJ was within her discretion to find that Dr. Jarrin's conclusion that Plaintiff was unable to work brief, conclusory, and was not supported by the record.  While the ALJ did err by stating that no treatment records exist, because the ALJ was required to reject Dr. Jarrin's ultimate conclusion that Plaintiff was unable to work under Social Security Ruling 96-5p, and because the existing notes relevant to Plaintiff's mental condition were minimal, the Court finds the error to be harmless.  Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** on this ground and Defendant's Motion be **GRANTED**.

**B.     The ALJ's Rejection of Drs. Essex and Torricelli's Residual Functional Capacity Assessments**

In his Motion, Plaintiff contends that the ALJ erred by rejecting Drs. Essex and Torricelli's Functional Capacity Assessments that the Plaintiff suffered from PTSD and was thus severely limited in several areas of mental function.  (Doc. No. 12 at 22).  Plaintiff contends that the ALJ rejected these opinions in favor of Dr. Bolter's assessment that Plaintiff suffered merely a general anxiety disorder with PTSD features.  Id.  Plaintiff asserts that the ALJ did not provide a legitimate reason for rejecting the opinions of Drs. Essex and Torricelli.  Defendant counters that the ALJ's decision was supported by legitimate reasons backed by substantial evidence on the record.

When the opinion of a treating physician is contradicted by another source, it can only be

1  rejected for specific and legitimate reasons that are supported by substantial evidence in the

2  record.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citing Andrews v. Shalala, 53 F.3d

3  1035, 1043 (9th Cir. 1995).  Plaintiff is correct that the opinion of a nonexamining physician, by

4  itself, does not constitute substantial evidence sufficient to overturn the opinion of a treating

5  source.  Id.  When combined with other evidence in the record, however, the opinion of a

6  nonexamining source can be used over the contrary opinion of a treating source.  Saelee v. Chater,

7  94 F.3d 520, 522 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989).  For

8  example, the Magallanes court upheld an ALJ's decision to reject the opinion of a treating source

9  in favor of a nonexamining source when the ALJ also relied on objective medical evidence in the

10  record, contrary reports from the examining sources, and testimony from the claimant that

11  conflicted with the treating source's opinion.  Magallanes, 881 F.2d at 751-55.

12     **Dr. Torricelli**

13     The ALJ addressed the opinions of Drs. Torricelli and Essex in her opinion, and provided

14  several reasons for rejecting their assessment in favor of Dr. Bolter's.  (A.R. at 34-35).  As to Dr.

15  Torricelli, the ALJ stated that his notes were not complete enough to support his conclusion and

16  may have been based on the opinion of other doctors; there was no objective evidence in

17  Plaintiff's record to support a finding of major depression; evidence in Plaintiff's file contradicted

18  a finding of major depression; and, Dr. Torricelli improperly placed a great deal of weight in

19  Plaintiff's "occupational, financial, and medical problems" while ignoring his actual mental

20  condition.  (A.R. at 35).

21     First, Plaintiff contends that the ALJ erred in finding that there is insufficient evidence to

22  support Dr. Torricelli's assessment and that the assessment was based on the opinion of other

23  doctors.  Plaintiff explains that it is the common practice of large hospitals, such as the VA where

24  Plaintiff was treated, to divide a patient's care between several doctors, but that the doctors share

25  their notes regarding the patient's treatment to create a master file which can be viewed by all

26  doctors.  (Doc. No. 12 at 23).  Thus, according to Plaintiff, even though Dr. Torricelli only

27  examined Plaintiff on one or two occasions, all the information in Plaintiff's file was available to

28  him and it is irrelevant that other doctors may have contributed to the file.  Id.  Plaintiff notes that

1    Dr. Torricelli's opinion was expressly based on Plaintiff's treatment file from the VA, and that the

2    record contained several references to Plaintiff's mental status.  (A.R. at 865-876).

3         Defendant counters that even though Plaintiff provides an explanation why Dr. Torricelli's

4    actual contact with Plaintiff was minimal and infrequent, the ALJ cannot overlook a scarcity or

5    lack of treatment.  Indeed, the ALJ is required to consider to consider the nature of the doctor's

6    treatment under 20 C.F.R. § 416.927(d)(2).  The ALJ is explicitly instructed to consider both the

7    frequency of treatment and the extent of treatment when evaluated that doctor's opinion on a

8    plaintiff's condition.  Id.  Likewise, the ALJ properly considered that parts of Dr. Torricelli's

9    opinion were admittedly based on the opinions of other doctors.  Id.  Here, Plaintiff acknowledges

10   that Dr. Torricelli has only treated Plaintiff on one or two occasions and that his opinion is based,

11   at least in part, on the opinions of others.

12        Furthermore, the ALJ properly cited contradictory evidence in the record, as noted by Dr.

13   Bolter, that undermined Dr. Torricelli's conclusion.  (A.R. at 36).  Specifically, the ALJ noted that

14   Plaintiff's ability to maintain a treatment routine and participate in group treatment was not in line

15   with a finding of severe mental limitation.  Id.  Contradictory evidence in the record creates an

16   ambiguity for the ALJ to resolve, and is a legitimate reason to question a treating physician's

17   assessment.  Lester, 81 F.3d at 830-31.  The ALJ provided valid reasons, supported by substantial

18   evidence on the record, that support the ALJ's decision to reject Dr. Torricelli's opinion.

19   Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** on this ground, and

20   Defendant's Motion be **GRANTED**.

21        **Dr. Essex**

22        The ALJ also provided reasons for rejecting the opinion of Dr. Essex.  In her opinion, the

23   ALJ stated that Dr. Essex admitted to not reading the entire record, was unaware of the nature of

24   Plaintiff's "intrusive thoughts," has not performed a detailed exploration of Plaintiff's symptoms,

25   recognizes that Plaintiff is stressed by his physical condition, and that Dr. Essex's assessment is

26   inconsistent with objective medical evidence on record.  (A.R. at 35).

27        Plaintiff contends that these readings are premised on an incorrect interpretation of a May

28   31, 2007 letter from Dr. Essex, and are thus improper.  (Doc. No. 12 at 24).  According to Plaintiff,

1    Dr. Essex's letter in which he made these statements was a simple explanation that VA doctors do

2    not have time to conduct "in-depth historical evaluations with patients," and focus instead on

3    treating the patient's current symptoms.  (A.R. at 689).  Plaintiff contends that Dr. Essex's PTSD

4    assessment was based on treatment notes from Psychiatrist Kim, which detail "combat

5    nightmares" and "anxiety dreams," as well as other observed symptoms which adequately support

6    Dr. Essex's PTSD finding.  (A.R. at 756, 835).  Defendant counters that the reason for Dr. Essex's

7    unfamiliarity with the record is irrelevant, as the ALJ is permitted to reject opinions that are brief,

8    conclusory or unsupported, regardless of the reason why they are unsupported.

9         Plaintiff's argument is unavailing.  Plaintiff contends that the ALJ misread Dr. Essex's

10   letter.  Instead of disputing that Dr. Essex's familiarity with the record was incomplete, however,

11   Plaintiff proceeds to explain why Dr. Essex's familiarity with the record was incomplete.  (Doc.

12   No. 12 at 24).  Plaintiff then refers to treatment notes created by a different doctor in support of the

13   thoroughness of Dr. Essex's opinion.  The ALJ is required, however, to consider a doctor's

14   familiarity with the record in evaluating that doctor's assessment.  Thomas, 278 F.3d at 957; 20

15   C.F.R. § 416.927(d)(2).  Furthermore, as discussed above, while there is some evidence to support

16   Dr. Essex's finding, there is also significant evidence in the record to contradict a finding of

17   PTSD.  Thus, even if Dr. Essex were familiar with the record, his contrary opinion would merely

18   create an ambiguity in the record for the ALJ to resolve.  Lester, 81 F.3d at 830-31.  The ALJ has

19   provided specific and legitimate reasons, supported by substantial evidence on the record that

20   support her decision to reject the assessments of Dr. Essex and to instead rely on the opinion of Dr.

21   Bolter.  Id.  Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** on this

22   ground and Defendant's Motion be **GRANTED**.

23        **C.**      **The ALJ's Reliance on the Opinion of Advisor Bolter to Determine Plaintiff's**

24                 **Mental Limitations.**

25        Plaintiff contends that the ALJ erred when she found that Plaintiff could engage in simple,

26   repetitive tasks with no more than minimal contact to others.  (Doc. No. 12 at 25-26).  Plaintiff

27   contends that the ALJ's only support for this position was the opinion of Dr. Bolter, a non-

28   examining psychiatric advisor.  Id. According to Plaintiff, all four treating psychiatrists found far

greater functional limitations, and as a matter of law, the opinion of a non-examining physician such as Dr. Bolter does not constitute the "substantial evidence" necessary to override their opinions.  Id.

Defendant, on the other hand, contends that the ALJ's decision is supported by the record, and that the record does not support a finding of a more extreme mental limitation.  (Doc. No. 14 at 14).  Defendant contends that Dr. Bolter's opinion was supported by the medical evidence of record, including Plaintiff's medical history, clinical and objective signs of mental function, and treatment notes.  Id.  Furthermore, Defendant notes that the ALJ found inconsistencies in the opinions of the treating physicians.

Here, as discussed above with regard to Drs. Torricelli and Essex, the ALJ explicitly noted that the opinions of the treating sources were not supported by the objective medical evidence of record.  (A.R. at 35, 36).  Furthermore, the ALJ found Dr. Bolter's opinion to be more consistent with the record as a whole, and was entitled to afford it greater weight.  20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).  Dr. Bolter noted deficiencies in the medical record, especially in light of the Social Security Manual's guidelines regarding treatment notes, that called Plaintiff's PTSD diagnosis into question (A.R. at 89), noted that the previous RFC assessments were presented mainly on simple check off forms and conflicted with Plaintiff's solid progress notes and mental status exams (A.R. at 90), and that Plaintiff's ability to function in groups and maintain attention contradicted the extreme RFC findings of other doctors (A.R. at 92).  This created a conflict in the record, and it is the ALJ's duty alone to resolve such a conflict.  Saelee, 94 F.3d at 522.

In light of the these inconsistencies, the ALJ then considered Dr. Bolter's opinion and determined that it was supported by the objective evidence on record, including Plaintiff's treatment notes, progress reports, and treatment history (AR at 35).  The Court finds that the ALJ provided specific and legitimate reasons for rejecting the opinions of the examining physicians, and that those reasons are supported by substantial evidence on the record.  Because the decision was well within the ALJ's discretion, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED** on this ground.

1    ///

2    ///

3        **D.      The ALJ's Finding that Plaintiff's Testimony Regarding His Claims of**

4        **Disabling Symptoms Was Not Credible**

5            In his Motion, Plaintiff contends that the ALJ erred by finding Plaintiff's claims of

6    disabling symptoms to be not credible.  Though the ALJ listed thirteen reasons for making this

7    determination, Plaintiff contends that the decision was not supported by substantial evidence in the

8    record.  (Doc. No. 12 at 26).  Defendant counters that the ALJ's listed reasons are sufficiently

9    specific to explain the decision to reject Plaintiff's statements, and thus the ALJ's credibility

10   determination was proper under Social Security Ruling 96-7p.

11           An ALJ is not "required to believe every allegation of disabling pain" or other impairment.

12   See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, an ALJ must provide specific,

13   cogent reasons for rejecting a plaintiff's testimony.  Morgan v. Commissioner of Soc. Sec. Admin,

14   169 F.3d 595, 599 (9th Cir. 1999); Lester, 81 F.3d at 834.  The reasons provided by the ALJ must

15   be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

16   claimant's testimony.  Thomas, 278 F.3d at 958.  The factors that an ALJ may consider in deciding

17   whether to reject a claimant's testimony are specified in the Social Security Administration rules,

18   and the ALJ may not cite to reasons which do not comport with the Agency's rules.  Orn v. Astrue,

19   495 F.3d 625, 635-37 (9th Cir. 2007).  Those reasons include "reputation for truthfulness,

20   inconsistencies in the testimony or between testimony and conduct, daily activities, and

21   'unexplained or inadequately explained, failure to seek treatment of follow a prescribed course of

22   treatment.'"  Id. at 636 (citing Fair, 885 F.3d at 603).

23           Plaintiff disputes the reasons provided by the ALJ in her opinion, alleging that many of

24   these reasons are duplicative or irrelevant.  The Court finds that there are several adequate basis

25   for upholding the ALJ's finding of Plaintiff's testimony as non-credible, and that none of the

26   ALJ's stated reasons are based on significant error.

27           First, the ALJ noted that Plaintiff's testimony regarding his physical ability conflicted with

28   the objective medical evidence on record and with the testimony of Drs. Close and Bolter.  (A.R.

at 38).  Plaintiff contends that these opinions do not indicate a lack of honesty on Plaintiff's part as neither doctor suggested that Plaintiff was exaggerating his claims or malingering.  (Doc. No. 12 at 27).  Plaintiff's argument is unavailing.  Inconsistencies between a plaintiff's testimony and the medical evidence of record is a proper basis for questioning that testimony.  See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991).  In addition to the reports of Drs. Close and Bolter, the ALJ also noted that there are no MRIs, x-rays or other tests that support Plaintiff's claims of disabling pain.  (A.R. at 38).  While Plaintiff contends that he has proved the existence of his injuries with MRIs, that does not require that the ALJ accept the Plaintiff's testimony regarding the extent of those injuries.  See Fair, 885 F.2d at 603.  The ALJ also noted that Plaintiff's testimony regarding disabling pain was inconsistent with his claims about his daily activities. While Plaintiff contends that the ALJ did not adequately describe Plaintiff's daily activities, a review of the transcript from the hearing shows that the ALJ questioned Plaintiff extensively on his daily activities.  (A.R. at 58-61).  The ALJ may properly consider inconsistencies in the testimony to find a plaintiff not credible.  Orn, 495 F.3d at 635-37; 20 C.F.R. § 404.1529(c)(3)(i).

Second, the ALJ noted that Plaintiff has received only routine or conservative care.  (A.R. at 38).  Plaintiff contends that this rationale is "fully duplicative" with the ALJ's finding that Plaintiff's testimony was not supported by objective evidence and should be disregarded.  (Doc. No. 12 at 27).  The Court disagrees.  A finding that the plaintiff has undergone only conservative or limited treatment is a legitimate basis for questioning an allegation of disabling pain.  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007); Fair, 885 F.2d at 604.

Finally, the ALJ properly considered Plaintiff's demeanor at the hearing.  (A.R. at 38-39).  The ALJ noted that Plaintiff was able to participate in the hearing and respond to questions with no apparent difficulty.  The ALJ's assessment of a plaintiff at the hearing is also a proper basis for finding the plaintiff not credible.  Thomas, 278 F.3d at 960.

The Court finds that the ALJ provided specific, cogent reasons for rejecting Plaintiff's testimony.  Morgan, 169 F.3d 595, 599 (9th Cir. 1999); Lester, 81 F.3d at 834.  Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** on this ground and Defendant's Motion be **GRANTED**.

- 13 -

## V.  Conclusion

For the reasons set forth herein, it is **RECOMMENDED** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED**.  This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988).  Any party may filed written objections with the court and serve a copy on all parties by **January 27, 2012**.  The document shall be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed by **February 10, 2012**. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED:  January 6, 2012

Hon. Mitchell D. Dembin
U.S. Magistrate Judge