1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

10

## SOUTHERN DISTRICT OF CALIFORNIA

11

12  ROBERT L. TREADWELL,                        CASE NO. 10cv2016-WQH-MDD

13                                Plaintiff,     ORDER

14          vs.

15  MICHAEL J. ASTRUE, Commissioner of
    Social Security Administration,

16                                Defendant.

17

HAYES, Judge:

18
19        The matters before the court are the Motion for Summary Judgment or Remand by

20  Plaintiff Robert Treadwell (ECF No. 12), the Cross Motion for Summary Judgment by

    Defendant Michael Astrue, Commissioner of the Social Security Administration, (ECF No.
21
    18), and the Report and Recommendation by the Magistrate Judge (ECF No. 20).
22

## PROCEDURAL BACKGROUND
23

24        On April 4, 2006, Plaintiff filed an application for disability insurance benefits with the

25  Defendant Commissioner of Social Security Administration alleging onset of disability on

    December 31, 2003.  Administrative Record ("A.R.") 201-205.  Plaintiff's claim was denied
26
    at the initial level and again upon reconsideration.  A.R. 108-11, 116-20.  On November 6,
27
    2008, an administrative hearing was held at which Plaintiff appeared with counsel and testified
28
    before an administrative law judge ("ALJ").  A.R. 43-105.

On December 31, 2008, the ALJ issued a written decision finding that Plaintiff was not disabled. A.R. 29-41. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 31, 2003. The ALJ found that Plaintiff had severe impairments of osteoarthritis, patella femoral chondromalacia bilateral, depression, and anxiety disorder with Posttraumatic Stress Disorder ("PTSD") features. The ALJ found that these impairments did not meet or equal a listed impairment. The ALJ found that Plaintiff retained the residual functional capacity to physically lift or carry up to 10 pounds frequently and 20 pounds occasionally, perform occasional postural activities, and avoid ladders, ropes, heights, or moving machinery. The ALJ found that Plaintiff suffered mental limitations that limit him to simple, unskilled tasks with no more than minimal contact with others. In making the mental impairment and limitation determinations, the ALJ rejected the opinions of Plaintiff's treating doctors and adopted the opinion of the non-examining medical expert. Finally, the ALJ found that Plaintiff was unable to perform any past relevant work but that jobs exist in the national economy that he can perform, given his age, education, work experience, and residual functional capacity.

The ALJ's decision became the final decision of the Defendant Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 1-4, 18-21.

On September 28, 2010, Plaintiff commenced this action seeking judicial review of Defendant's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

On April 1, 2011, Plaintiff filed a Motion for Summary Judgment. (ECF No. 12). Plaintiff contends that the ALJ erred in rejecting the opinions of Plaintiff's treating doctors and that the ALJ improperly weighted the opinion of the non-examining medical expert regarding Plaintiff's mental impairment and limitations. On May 11, 2011, Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 19) and a Cross-Motion for Summary Judgment (ECF No. 18). Defendant contends that the ALJ properly evaluated Plaintiff's mental capacity and provided sufficient reasoning for rejecting the opinions of Plaintiff's treating doctors.

On January 6, 2012, the Magistrate Judge issued a Report and Recommendation recommending that the Motion for Summary Judgment filed by Plaintiff be denied and the Cross-Motion for Summary Judgment filed by Defendant be granted.  (ECF No. 20).  On January 27, 2012, Plaintiff filed objections to the Report and Recommendation.  (ECF No. 21).

**FACTUAL BACKGROUND**

**I.      Plaintiff's Educational and Employment History**

Plaintiff was born on September 26, 1964.  Plaintiff was 39 years old at the date of onset of his alleged disability on December 31, 2003.  A.R. 201.  Plaintiff dropped out of high school and later got his GED.  A.R. 48-49.  Plaintiff enlisted in the U.S. Marine Corps and served in the Combat Marine Infantry as an assault weapons specialist.  A.R. 87.  While on duty, Plaintiff suffered a fall with rockets strapped to his back and experienced an explosion that left him blinded for weeks.  After leaving the military, Plaintiff attended cosmetology and culinary school and attempted work in telemarketing, canvassing, engraving trophies and selling cosmetology products.  Plaintiff stated that his physical injuries prevented sustained work in these fields.   A.R. 49-50.

**II.     Plaintiff's Medical History**

The findings of the ALJ regarding Plaintiff's physical functioning capabilities is not a subject of dispute in the motions for summary judgment or objections to the Report and Recommendation.  The ALJ found that Plaintiff suffered severe physical impairments of osteoarthritis and patella femoral chondromalacia bilateral.  Neither party has opposed these findings or the ALJ's conclusions stemming from these findings.  The subject of dispute in the motions for summary judgment and objections to the Report and Recommendation concern the ALJ's findings regarding Plaintiff's mental functioning capabilities.

The records show that Plaintiff received mental health treatment at the San Diego Department of Veterans Affairs from 2003 to 2008.  Plaintiff was treated by the following staff (among others not listed): Dr. Diego Jarrin, internalist; Dr. Michael Essex, psychiatrist; Dr. Michael Torricelli, psychiatrist; Dr. Daniel Kim, psychiatrist; Madeline Gershwin, Registered Nurse at the Posttraumatic Stress Clinic; Dr. Jeff Sanders of the Psychiatric Emergency Clinic,

1   and; Dr. Ryan Trim, postdoctoral psychologist.

2       On September 3, 2003, Plaintiff was examined by Dr. Jarrin.  Plaintiff reported that his

3   prozac medication was not helping his mood and that he would sometimes behave strangely

4   and uncontrollably, hearing voices and feeling irritable.  Dr. Jarrin's impression was that

5   Plaintiff suffered a "mood disturbance with psychotic features" and referred Plaintiff to

6   psychiatry for a consultation. A.R. 566-67.

7       On May 27, 2004, Plaintiff was examined by Dr. Jarrin.  Plaintiff reported "frustration

8   with psychiatric issues," a recent altercation with police, and "significant anger and frustration

9   with people."  A.R. 548-49.  Dr. Jarrin consulted with Plaintiff regarding Plaintiff's mood

10  disorder medication and referred Plaintiff to behavioral counseling and further psychiatric

11  counseling.

12      On December 23, 2004, Plaintiff was examined by Dr. Jarrin who noted Plaintiff's

13  history of depression and that Plaintiff missed his last psychiatry appointment.  A.R. 538-39.

14      On January 27, 2005, Plaintiff was seen by Dr. Jarrin.  Plaintiff reported recurrent

15  "thoughts of traumatic events of his past and nightmares," and stated that he was

16  confrontational and prone to outbursts.  A.R. 535-37.  Dr. Jarrin instructed Plaintiff to discuss

17  his medications for emotional stability and symptoms of PTSD with psychiatry.

18      On March 1, 2005, Plaintiff failed to attend a clinic group orientation meeting that was

19  scheduled for him. A.R. 534.

20      On July 18, 2005, Plaintiff was examined by Dr. Jarrin who noted that Plaintiff "is

21  doing better with regards to his psychiatric issues."  A.R. 532-33.  Plaintiff reported that he

22  only drinks alcohol on weekends and has been better at controlling his anger.  Dr. Jarrin stated

23  that Plaintiff would continue with his mood-stabilizing medications (carbamazepine and

24  risperidone) and counseling groups.

25      On August 9, 2005, Plaintiff was evaluated at the Posttraumatic Stress Disorder Clinic

26  where he was diagnosed with "severe PTSD" and "recurrent Major Depressive Disorder."

27  A.R. 309.  The records show that Plaintiff reported two significant non-combat accidents while

28  in the military that both meet stressor criteria for PTSD.  Plaintiff was found to meet symptom

criteria for PTSD in all categories of experience, avoidance, and hyperarousal.  Plaintiff's mood was depressed, concentration impaired, and task completion was met with difficulty.  Dr. Essex and R.N. Gershwin stated that Plaintiff is "totally disabled" and "severely incapacitated by both his physical and psychological conditions."  A.R. 309.

On September 22, 2005, Plaintiff was examined by Dr. Essex and reported that, while he does not feel good when alone, he enjoys his dogs and has been able to keep his anger under control.  Dr. Essex conducted a mental status exam and concluded that Plaintiff was "doing fairly well" and would continue his current medications.  A.R. 421.

On January 5, 2006, Plaintiff was seen by Dr. Jarrin and reported improved feelings of anxiety and volatility but persistent problems with sleep.  A.R. 664-66.  Plaintiff also was examined by Dr. Essex on January 5, 2006.  Dr. Essex conducted a mental status exam and found that Plaintiff was in a good mood and "showing improvement with combined therapy and medications." A.R. 340-41.

On March 3, 2006, Plaintiff was examined by Dr. Jarrin and denied homicidal or suicidal ideation.  A.R. 334-35.

On April 6, 2006, Plaintiff was examined by Dr. Essex who noted Plaintiff's "slow steady progress."  A.R. 404.  Dr. Essex conducted a mental status exam and found Plaintiff's mood "somewhat depressed."  A.R. 404.  Dr. Essex stated that Plaintiff "appears to be doing well with his current medication and therapy program" but that "he continues to be quite impaired."  A.R. 404.  Dr. Essex maintained Plaintiff on his current medications and therapies.

On May 3, 2006, Plaintiff met with R.N. Gershwin for individual supportive psychotherapy for PTSD.  A.R. 403.  Plaintiff reported discomfort with the cognitive behavior therapy group "because the room is too small and there are too many people." A.R. 403.  Plaintiff expressed his intention to drop the group.

On July 7, 2006, Plaintiff was examined by Dr. Jarrin and reported feeling frustrated and stressed over the past few months.  A.R. 400-02.  Dr. Jarrin noted Plaintiff's diagnosis of Depressive Disorder and PTSD.

On July 13, 2006, Plaintiff was examined by Dr. Essex who conducted a mental status

1    exam.  Dr. Essex stated Plaintiff's PTSD diagnosis and maintained Plaintiff on his current

2    medications.  A.R. 399.

3         As of November 1, 2006, Plaintiff dropped out of his cognitive behavioral therapy

4    group.  A.R. 712 (comment by R.N. Gershwin).

5         On November 7, 2006, Plaintiff was examined by Dr. Essex who found Plaintiff's

6    "affect bright" and "mood good." A.R. 848.  Dr. Essex noted Plaintiff's PTSD diagnosis and

7    maintained Plaintiff on his current medications.

8         On November 27, 2006, Plaintiff failed to appear for his cognitive behavioral group

9    therapy session.  A.R. 634.

10        On January 8, 2007, Plaintiff was examined by Dr. Jarrin and reported that his "mood

11   has not been the best but doing well otherwise." A.R. 630-32.  Plaintiff reported bad dreams,

12   depression, anxiety, and poor sleep.  Dr. Jarrin noted Plaintiff's history of depression and

13   anxiety and that Plaintiff was being "followed by psychiatry."  A.R. 630-32.

14        On January 18, 2007, Plaintiff was examined by Dr. Essex who found Plaintiff's mood

15   to be "angry and depressed." A.R. 629.  At this appointment, Dr. Essex increased Plaintiff's

16   medications. On January 18, 2007, Dr. Essex completed a Psychiatric Impairment

17   Questionnaire summarizing his clinical findings regarding Plaintiff's condition.  His findings

18   were based on regular treatment of Plaintiff since 2004.  Dr. Essex stated that Plaintiff suffers

19   from PTSD and severe depression, and listed the positive clinical findings in support of his

20   diagnoses.  Dr. Essex stated his conclusions regarding Plaintiff's functional limitations in the

21   work environment, placing Plaintiff's specific abilities on a scale from "no evidence of

22   limitation" to "markedly limited." A.R. 602-09.

23        On January 22, 2007, Plaintiff attended a cognitive behavioral therapy session with Dr.

24   Trim.   Plaintiff reported significant depression symptoms which Dr. Trim stated were

25   "depressed mood, anhedonia, insomnia, psychomotor retardation, fatigue, feelings of

26   worthlessness, and problems thinking."  A.R. 840-41.  Plaintiff reported PTSD symptoms

27   which Dr. Trim stated were isolation, irritability, and hypervigilance "which significantly

28   impair his current functioning."   A.R. 840-41.  Dr. Trim referred Plaintiff to Dr. Essex for

1    "continued medication management."  A.R. 840-41.

2         On February 15, 2007, Plaintiff was examined by Dr. Essex and reported frustration

3    with construction workers at his home.  Dr. Essex conducted a mental status exam and noted

4    Plaintiff's diagnosis of PTSD and Major Depressive Disorder.  A.R. 838-39.

5         On February 15, 2007, Plaintiff called to cancel his attendance at group therapy due to

6    anxiety from construction workers at his home.  A.R. 839.

7         On February 22, 2007, Plaintiff again cancelled his attendance at group therapy due to

8    preoccupation with construction at his home.  Plaintiff was instructed he would have to start

9    a new group therapy because of his two absences.  A.R. 838.

10        On March 31, 2007, Plaintiff attended a routine follow up with Dr. Kim and reported

11   poor sleep with combat nightmares, hypervigilance, episodic irritability, and frequent

12   distractions.  A.R. 835-36.

13        On May 3, 2007, Plaintiff did not show up for his cognitive behavior therapy session

14   and did not call to cancel the scheduled appointment.  A.R. 828.

15        On May 9, 2007, Plaintiff attended a routine follow up with Dr. Kim and reported

16   continued isolation and sleep problems, but improvement on current medications. A.R. 827.

17   Dr. Kim conducted a mental status exam and stated Plaintiff's diagnosis of PTSD and Major

18   Depressive Disorder.

19        In a letter dated May 31, 2007, Dr. Essex stated that "VA treating psychiatrists do not

20   have adequate time to do in-depth historical evaluations with patients" and that "[m]ost of the

21   time I had spent with [Plaintiff] was dealing with his current problems and developing a

22   treatment plan."  A.R. 689.  Dr. Essex noted that Plaintiff's "most evident stressors are related

23   to [his] obvious physical difficulties" and that he has suffered "frightening experiences... which

24   could lead to PTSD."  A.R. 689.

25        On July 19, 2007, Plaintiff was examined by Dr. Jarrin who noted that Plaintiff

26   "continues to be followed by mental health for his posttraumatic stress disorder issues," and

27   continued Plaintiff on his current medications.  A.R. 813-17.

28

On August 15, 2007, Plaintiff attended a routine follow up with Dr. Kim and reported sleep fragmented by nightmares, continued social isolation, and hypervigilance. A.R. 812-13. Dr. Kim noted Plaintiff's diagnosis of PTSD and Major Depressive Disorder.

On September 5, 2007, Plaintiff presented at the Psychiatric Emergency Clinic "in [a] state of crises" regarding a recent altercation with his wife. A.R. 811. Plaintiff was depressed, anxious, and unable to focus. Plaintiff verbalized hopelessness and admitted to suicidal inclinations. Plaintiff was examined by Dr. Sanders who reviewed Plaintiff's psychological and social history, conduced a Suicide Risk Assessment and mental status exam, and made diagnostic assessments. A.R. 806-11. Dr. Sanders stated that Plaintiff was "a male with passive suicidal ideation" who possesses "risk factors of chronic pain, depression, [and] continued ethanol abuse." A.R. 806-11. Dr. Sanders diagnosed Plaintiff with PTSD and Major Depressive Disorder, and recommended Plaintiff return to cognitive behavior therapy.

On November 2, 2007, Plaintiff was diagnosed with continuous alcohol dependence and referred to the Alcohol Drug Treatment Program clinic for treatment. A.R. 773-76. Plaintiff attended therapy with this group for approximately two weeks. On November 20, 2007, Plaintiff met with a social worker at the clinic and stated that he was dropping out of the treatment program because "I don't have a drinking problem, my problems are with anger, anxiety, and PTSD." A.R. 759-60.

On November 21, 2007, Plaintiff did not attend his cognitive behavioral therapy session for depression. A.R. 759.

On December 12, 2007, Plaintiff attended a routine follow up with Dr. Kim and reported increased stress and frustration resulting in passive thoughts of death and suicide. A.R. 756-57. Plaintiff reported hypervigilance and anxious dreams resulting in poor sleep and insomnia. Dr. Kim stated his assessment that Plaintiff suffers from PTSD and recurrent Major Depressive Disorder. Dr. Kim and Plaintiff discussed treatment options.

On December 12, 2007, Plaintiff failed to appear at his cognitive behavior group therapy session because of illness. A.R. 755-56.

1   On December 17, 2007, Plaintiff was referred to cognitive behavioral therapy for

2   treatment to deal with his "recurrent, frequent nightmares which seem to be increasing in

3   frequency." A.R. 703.

4   On January 9, 2008, Plaintiff attended a nightmare therapy session at the cognitive

5   behavioral therapy clinic with Dr. Trim. A.R. 704-05.   Plaintiff discussed the nature,

6   frequency, and intensity of his nightmares with Dr. Trim, describing "very intense nightmares"

7   that generally exaggerate "past accidents and trauma, including having his face burned, having

8   missiles on his back explode, being attacked by enemy planes, and enduring a destructive

9   hurricane." A.R. 704-05.  Dr. Trim stated the following diagnostic impressions of Plaintiff:

10  chronic PTSD, Major Depressive Disorder, and alcohol dependence.  A.R. 704-05.

11  On January 31, 2008, Plaintiff returned to nightmare therapy with Dr. Trim after

12  missing his last appointment due to medical problems.  A.R. 722-23, 740.  Plaintiff again

13  reported intense nightly nightmares with poor sleep quality.  Dr. Trim stated his diagnosis of

14  Plaintiff for chronic PTSD, Major Depressive Disorder, and alcohol dependence.

15  On February 1, 2008, Plaintiff was examined by Dr. Jarrin who noted that Plaintiff's

16  mood was stable and unchanged since the last visit.  A.R. 716-19.  Dr. Jarrin maintained

17  Plaintiff on his "current pharmacologic regimens for adequate control" of his mood,

18  depression, and anxiety.  A.R. 716-19.

19  On July 16, 2008, Dr. Torricelli completed a Psychiatric Impairment Questionnaire

20  summarizing his clinical findings regarding Plaintiff's condition.  His findings were based on

21  regular treatment of Plaintiff since 2004.  Dr. Torricelli stated that Plaintiff suffers from PTSD

22  and depression, and listed the positive clinical findings in support of his diagnoses.  Dr.

23  Torricelli stated his conclusions regarding Plaintiff's functional limitations in the work

24  environment, placing Plaintiff's specific abilities on a scale from "no evidence of limitation"

25  to "markedly limited." A.R. 865-72.  On July 16, 2008, Dr. Torricelli also wrote a letter

26  indicting that Plaintiff's "most current diagnoses include" PTSD and recurrent, moderate to

27  severe Major Depressive Disorder.  A.R. 874.

28

III.   **The Administrative Hearing**

An Administrative Hearing was held on November 6, 2008 before the ALJ.   A.R. 43-105 (Hearing Transcript).   Plaintiff appeared at the hearing represented by counsel.   Also in attendance and testifying were Dr. Peter Shoshine, medical expert for Plaintiff's physical capabilities, Dr. Sidney Bolter, medical expert for Plaintiff's mental capabilities, and Gloria Lastoff, vocational expert.

Plaintiff testified at the hearing.   A.R. 48-68.   Plaintiff's hands shook during his testimony, which he attributed to nervousness and anxiety.   A.R. 63-64.   Plaintiff reported experiencing anxiety, shortness of breath, and heart palpitations during PTSD episodes, which sometimes occur daily.   A.R. 82, 86.   Plaintiff reported an aversion to loud noises, crowds, and small spaces.   A.R. 83.   Plaintiff reported having six dogs, three of which are registered therapy animals.   A.R. 84-85.   Plaintiff reported taking the following psychiatric medications: Lorazepa for anxiety, Divalproex for mood, Mirtazapine for depression, and Risperidone for cognitive symptoms (anti-psychotic).   A.R. 54-56, 80-81.

Dr. Bolter testified as an impartial medical expert regarding Plaintiff's mental functioning capabilities.   Dr Bolter testified that:

> The record itself is unfortunately somewhat inadequate. First, there is really no good complete mental status done anywhere in the record. There's someone's two or three lines and nothing that really makes it a good mental status.... Second is there is some [residual functional capacities] in here that give him some very low ratings... but they... aren't backed up by good solid progress notes and mental status exams.... He does have, have the depression, I would say depression NOS [not otherwise specified] because there's been no real evidence for a continuous major depressive disorder. The diagnosis is carried from time to time, but they don't really back that up with notes. Second... a PTSD diagnosis has been made carried through the record. But... I don't have enough evidence from [Dr. Essex] himself to say that he has the PTSD. I don't, really don't doubt that he has one, but I've got to move with the record....
>
> I would make it anxiety disorder NOS and then put after that, PTSD.... so that's sort of included in the generic anxiety NOS....
>
> Dr. Torricelli's records are... not really ones I could use. Most of them are impairment questionnaires and the others are not really complete enough that I could use to back up his conclusions.

A.R. 89-91.   Dr. Bolter testified:

> [Plaintiff] went to a lot of groups... So he was able to function. He had to pay attention in those groups, he can't just be wandering off.... It really goes to the

1      extreme in saying he can't do anything....

2      His activities would be mildly limited when you consider all that he was able to
3      do. His...social functioning... I would say would be moderate. His concentration, persistence, and pace, there's really not testing other than the practical point of view that he was able to do a lot of things and pay attention, so the most I would
4      say is he might be mildly limited if they tested him....

5      I would say I'd keep him on simple repetitive tasks. He'd have no trouble with that. He would have trouble with detailed tasks over a period of time and, or any
6      complex tasks. He could complete a work week without too much interference....

7 A.R. 92-95.

8      The record was kept open after the Administrative Hearing so that the ALJ could

9 receive additional updated psychiatric records, including records of Plaintiff's November 12,

10 2008 mental status examination and Dr. Jarrin's November 15, 2008 Multiple Impairment

11 Questionnaire, before making her decision.  A.R. 32.

12      On November 12, 2008, Plaintiff presented at the Department of Veterans Affairs for

13 a follow-up mental health visit.   At that time, Dr. Torricelli diagnosed Plaintiff with

14 "worsening" severe PTSD and "recurrent, chronic" severe Major Depression.  A.R. 876-77.

15 These diagnoses were based on Plaintiff's most recent mental health evaluations and

16 psychological testing scores, including the Beck Depression Scale, PTSD Military Checklist,

17 and Beck Anxiety Inventory.  Dr. Torricelli noted that Plaintiff "has passive suicidal thoughts

18 on an ongoing basis" and placed Plaintiff at 3/10 on the mood scale (10 is happy and 3 is

19 seriously depressed).  A.R. 876-77.  Dr. Torricelli stated that Plaintiff's "current psychological

20 testing scores combined with his current clinical mental health status examinations warrants

21 ongoing aggressive psychological and medication management."  A.R. 876-77.

22      On November 15, 2008, Dr. Jarrin completed a Multiple Impairment Questionnaire

23 summarizing his clinical findings regarding Plaintiff's condition.  His findings were based on

24 regular treatment of Plaintiff since 1999. Dr. Jarrin stated that Plaintiff suffers from PTSD and

25 major depression, which "contribut[e] to his [physical] pain experience" and are "complicated

26 by anxiety."  A.R. 881-88.   Dr. Jarrin stated that Plaintiff's prognosis was "poor to fair,

27 complicated by psychiatric issues."  A.R. 881-88.

28

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.; Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).  A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation omitted).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." *Id.* (citation omitted); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). Where the evidence reasonably can be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 350 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *See Lewis*, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Batson*, 359 F.3d at 1193.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred in rejecting the diagnostic and functionality opinions of Plaintiff's treating mental health doctors and that the ALJ improperly weighted the opinion of the non-examining medical expert regarding Plaintiff's mental health.  Defendant contends that the ALJ properly evaluated Plaintiff's mental functional capacity and provided sufficient reasoning for rejecting the opinions of Plaintiff's treating doctors.

The ALJ issued her decision on December 31, 2008, finding that Plaintiff was not disabled. A.R. 32-41. Pursuant to Social Security Regulations, the ALJ followed a five-step sequential evaluation process in making her determination that Plaintiff was not disabled. A.R. 32-41; see also 20 C.F.R. § 416.920(a) (describing five-step assessment). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. See 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. See 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. See 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001); see *also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir.1999). At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability of December 31, 2003. A.R. 34. This is not disputed by the parties.

## A.     Severe Impairment Determination

At the second step, the ALJ determined that Plaintiff suffers the following severe impairments: osteoarthritis, patella femoral chondromalacia bilateral, depression and an anxiety disorder with PTSD features. A.R. 34. In reaching the conclusion that Plaintiff suffered from depression and an anxiety disorder with PTSD features, the ALJ discredited the opinions of treating psychiatrists Dr. Essex and Dr. Torricelli, and adopted the opinion of non-examining medical expert Dr. Bolter. The ALJ referenced Dr. Bolter's hearing testimony and stated "that no initial mental status examination was done and there is not a good mental status record in the file.... there is no evidence in the file to establish a diagnosis of major depression.... [and] there are contradictory notes in the file." A.R. 34-35. The ALJ stated that, although the questionnaires completed by the treating psychiatrists show "extreme limitations,"

1    Plaintiff's attendance in group therapy programs "demonstrat[es] that he can, indeed, maintain
2    a routine, be punctual, participate, maintain focus and attention and cooperate with others in
3    a group, contradicting those limitations asserted."  A.R. 35.

4          In rejecting the opinion of Dr. Torricelli, the ALJ stated that Dr. Torricelli's "notes are
5    not complete enough to back up his conclusions, which may be based on the opinions of
6    others" and that Dr. Torricelli "seems to give great weight to [Plaintiff's] 'severe occupational,
7    financial and medical' problems, not his mental condition, in arriving at his opinion as to
8    [Plaintiff's] ability to work."  A.R. 35.

9          In rejecting the opinion of Dr. Essex, the ALJ stated that Dr. Essex casts doubt on his
10   own PTSD diagnosis by "admitting he has not read all the records, is unaware of the nature of
11   [Plaintiff's] alleged intrusive thoughts, has not taken the time to get into a detailed exploration
12   of symptoms, and recognizes that [Plaintiff] is stressed by his physical difficulties."  A.R. 35.
13   The ALJ adopted the opinion of Dr. Bolter "that the appropriate diagnosis was depression and
14   anxiety disorder with PTSD features," and not PTSD or Major Depressive Disorder.  A.R. 35.

15         The opinion of a treating physician generally should be given more weight than
16   opinions of doctors who do not treat the claimant. *See Turner v. Comm'r. of Soc. Sec.*, 613 F.
17   3d 1217, 1222 (9th Cir. 2010) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).
18   If the treating physician's opinion is not contradicted by another doctor, it may be rejected only
19   for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* (citing
20   *Lester*, 81 F.3d at 830-31).  Even when the treating doctor's opinion is contradicted by the
21   opinion of another doctor, the ALJ may properly reject the treating physician's opinion only
22   by providing "specific and legitimate reasons" supported by substantial evidence in the record
23   for doing so.  *Id.* (citing *Lester*, 81 F.3d at 830-31).  This can be done by "setting out a detailed
24   and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation
25   thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)
26   (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than
27   offer his conclusions. He must set forth his own interpretations and explain why they, rather
28   than the doctors', are correct." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting

1    *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  A non-examining doctor's opinion,

2    without additional supporting evidence from the record, does not constitute substantial

3    evidence with which to reject a treating doctor's opinion.  *Lester*, 81 F.3d at 831-32.

4         In this case, the ALJ rejected the opinions of treating Drs. Essex and Torricelli that

5    Plaintiff suffered from PTSD and Major Depressive Disorder, and adopted the contradictory

6    opinion of non-treating Dr. Bolter that Plaintiff suffered from non-specific depression with

7    PTSD features.  Because Plaintiff's treating doctors' opinions were contradicted in the record

8    by those of another doctor, the ALJ was required to provide specific and legitimate reasons,

9    supported by substantial evidence, for rejecting them. *See Turner,* 613 F.3d at 1222, and 20

10   CFR § 404.1527(d)(1) (2010).

11        The ALJ stated that there were insufficient records on file to support the diagnosis of

12   PTSD and Major Depressive Disorder.  However, the record reflects that Plaintiff was subject

13   to regular, routine mental status examinations over nearly ten years by Dr. Essex, Dr. Jarrin,

14   Dr. Kim, and Dr. Trim, that consistently resulted in the same diagnosis from each doctor:

15   PTSD and Major Depressive Disorder.  Plaintiff's mental health was repeatedly examined by

16   his doctors, including extensive evaluations conducted on August 5, 2005, and November 12,

17   2008.  The records from Dr. Torricelli indicate that Dr. Torricelli treated Plaintiff every eight

18   weeks for nearly four years as of July 2008.  Dr. Torricelli submitted two detailed letters

19   outlining Plaintiff's current diagnoses and summarizing Dr. Torricelli's clinical impressions

20   of Plaintiff based on appointments over the past several years.  The records from Dr. Essex

21   indicate that Dr. Essex treated Plaintiff every three months for nearly three years and

22   conducted a current mental status exam at each treatment session, regularly stating the

23   diagnosis of PTSD and Major Depressive Disorder.

24        The ALJ stated that there were "contradictory" records on file and notes that Plaintiff's

25   attendance at group therapy is evidence that he is not functionally limited.  The record does

26   not reflect "contradictory" evidence that Plaintiff successfully attended group therapy

27   programs for depression and PTSD.  The record reflects that Plaintiff struggled with attendance

28   at group therapy sessions and would miss and cancel appointments with some regularity, either

1  for illness, anxiety ("the room is too small and there are too many people" (A.R. 403)), or

2  without explanation.

3       In her written decision, the ALJ does not discuss the entirely consistent opinions of

4  treating Doctors Jarrin, Kim, and Trim that Plaintiff suffers from PTSD and Major Depressive

5  Disorder.  The "similarity of their conclusions provides reason to credit the opinions." *Lester*,

6  81 F.3d at 832.  The ALJ states no reason for rejecting these opinions, which are clearly stated

7  by treating doctors throughout the record.  Moreover, the "contradictory" evidence cited by

8  the ALJ to support her rejection of the treating doctor's opinions is not supported by evidence

9  in the record. The ALJ does not state specific, legitimate reasons supported by substantial

10  evidence on the record for rejecting the opinions of Plaintiff's treating doctors.  *See Turner,*

11  613 F.3d at 1222, and 20 CFR § 404.1527(d)(1) (2010).

12  **B.       Limitations Determination**

13       At the third step, the ALJ found that "the record does not report the existence of any

14  functional limitations and[/]or diagnostic test results" that would suggest Plaintiff's severe

15  impairments meet any listed impairments under Social Security Regulations.  A.R. 36.  Listed

16  impairments are those presumed to be disabling.  See 20 C.F.R. § 404.1525.  The ALJ found

17  that "no treating or examining physician has reported findings which either meet or are

18  equivalent in severity to the criteria of any listed impairment, nor are such findings indicated

19  or suggested by the medical evidence of record."  A.R. 36.  The ALJ found that Plaintiff's

20  mental impairments did not cause at least two "marked" limitations, but rather resulted in

21  "mild restrictions of the activities of daily living, moderate difficulties in maintaining social

22  functioning, and mild difficulties in maintaining concentration, persistence, or pace." A.R. 36.

23       "The treating physician's continuing relationship with the claimant makes him

24  especially qualified to evaluate reports from examining doctors, to integrate the medical

25  information they provide, and to form an overall conclusion as to functional capacities and

26  limitations...." *Lester,* 81 F.3d at 833.  Dr. Jarrin, Plaintiff's physician, treated Plaintiff every

27  four to six months for nearly ten years.  A.R. 881-88.  Dr. Jarrin diagnoses Plaintiff with Major

28  Depression and PTSD and states that Plaintiff's Major Depression and PTSD contribute to his

pain experience, make his symptoms worse, and are complicated by anxiety.  Dr. Jarrin states that Plaintiff is incapable of tolerating even low work stress and that Plaintiff's symptoms would increase if he were placed in a competitive work environment.

Dr. Essex, Plaintiff's psychiatrist, treated Plaintiff approximately once every three months from 2004 to 2007.  A.R. 602-09.  Dr. Essex diagnoses Plaintiff with depression and PTSD, and notes the following "positive clinical findings" that support his diagnosis: poor memory, appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional liability, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, difficulty thinking or concentrating, social withdrawal or isolation, blunt flat, or inappropriate affect, and decreased energy.  Dr. Essex states that Plaintiff is "markedly limited" in his abilities to do the following in a workplace setting: (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, (5) sustain ordinary routine without supervision, (6) work in coordination or proximity to others without being distracted by them, (7) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (8) interact appropriately with the general public, (9) accept instructions and respond appropriately to criticism from supervisors, and (10) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  A.R. 602-09.

Dr. Torricelli, psychiatrist, treated Plaintiff every eight weeks from 2004 to 2008.  A.R. 865-72.  Dr. Torricelli diagnoses Plaintiff with PTSD and depression, and notes the following "positive clinical findings" that support his diagnosis:  poor memory, appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional liability, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, blunt flat, or inappropriate affect, decreased energy, intrusive recollections of a traumatic experience, persistent irrational fears, hostility and irritability.  Dr.

Torricelli states that Plaintiff is "markedly limited" in his abilities to do the following in a workplace setting: (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, (5) sustain ordinary routine without supervision, (6) work in coordination or proximity to others without being distracted by them, (7) make simple work related decisions, (8) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (9) interact appropriately with the general public, (10) accept instructions and respond appropriately to criticism from supervisors, (11) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (12) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (13) respond appropriately to changes in the work setting, and (14) travel to unfamiliar places or use public transportation. A.R. 865-72.

Substantial evidence in the record from Plaintiff's long-term treating doctors show that Plaintiff's mental impairments cause numerous "marked limitations" in functional capacity that should have been considered by the ALJ in her analysis. Contrary to the findings made by the ALJ, the record does contain substantial evidence of functional limitations. Multiple treating doctors reported findings of Plaintiff's severe marked limitations. The ALJ's reasons stated in support of her functional limitation determination are contradicted by substantial evidence in the record.

It is within the Court's discretion to decide whether to reverse and remand for further administrative proceedings or to reverse and award benefits. *McAlister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate here where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). In this case, the action should be remanded for a new hearing consistent with this opinion.

**CONCLUSION**

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 20) is not adopted.  The Motion for Summary Judgment or Remand (ECF No. 12) filed by Plaintiff Robert Treadwell is GRANTED in part; this action is remanded to the Commissioner of Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for a new hearing before an administrative law judge for further consideration consistent with this opinion.

The Cross-Motion for Summary Judgment (ECF No. 18) filed by Defendant Michael Astrue as Commissioner of Social Security is DENIED.

The Clerk of the Court shall administratively close this case.

DATED:  March 22, 2012

**WILLIAM Q. HAYES**
United States District Judge